Muigawah **MUNUSAMY**

v.

**McCLELLAND ENGINEERS, INC.,**
**et al.**

Steven Peter **CROW**

v.

**OCEANEERING INTERNATIONAL,**
**INC.**

William Wayne **PICCO**

v.

**GLOBAL MARINE DRILLING CO.,**
**et al.**

Civ. A. Nos. **B–81–800–CA, B–82–143–CA**
**and B–82–709–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

July 12, 1984.

Benton Musslewhite and Friedman & Chaffin, of Houston, Tex., for plaintiffs.

James Patrick Cooney, Marion E. McDaniel, Jr., Jack L. Allbritton, and G. Byron Sims, Houston, Tex., for defendants.

## MEMORANDUM

JOE J. FISHER, District Judge.

In response to the invitation of the Court of Appeals for the Fifth Circuit to respond to Defendants' Petition for Writ of Mandamus, the district court offers this brief memorandum. While the court doubts that much can profitably be added to its earlier memorandum order (*Munusamy v. McClelland Engineers, Inc.*, 579 F.Supp. 149, (E.D.Tex.1984)), the court believes some further explanation may be helpful.

■ Defendants argue that the court erred in declining to make a choice of law before denying their motions to dismiss for *forum non conveniens*. Such would have been the case had the court granted the motions, since a case involving U.S. law generally cannot be dismissed for *forum non conveniens*. Because dismissal is not mandatory simply because foreign law applies, however, the postponement of a choice of law until trial is not significant.

■ The court deferred the choice of law because the pleadings and briefs of the parties caused the court to find the facts controlling the choice of law to be intertwined with the facts of the cases. As such, they were best left to be developed during trials on the merits.

Moreover, the court could not ignore the unequivocal language of the Shipowners' Liability (Sick and Injured Seamen) Convention, October 24, 1936, 54 Stat. 1693 (the Treaty), requiring "equality of treatment to all seamen [injured on the high seas] irrespective of nationality, domicile, or race." *Id.*, 54 Stat. 1700. The court was reluctant to discriminate against these foreign wards of the admiralty on the basis of their foreignness. Rather than summarily denying them the protection of U.S. law, the court chose the fairer course of first weighing all the evidence.

In considering the interests of foreign sovereigns in the causes, the court thought it axiomatic that even a third world sovereign would prefer that its citizens enjoy the most favorable treatment available under law, without regard to the forum. Should the foreign laws Defendants seek to apply diminish the recoveries of the seamen, the foreign sovereigns, whether as home states of the seamen or as places of injury, can have little interest in application of their recovery-diminishing laws. The only apparent interest the other nations might have in applying their laws is to protect

"their" defendants, i.e., the corporate surrogates created to insulate American owners from the burdens of American law. The interest would be in encouraging use of such devices in the haven states. But that is an interest with which this nation has little concern, the court believes. To the contrary, the interest of the United States in regulating its international maritime enterprises is at least as great. Moreover, that interest can hardly be said to vary with the nationality of the seamen involved. Obviously, the Treaty proscribes such discriminatory treatment.

 The convenience factors considered by the court did not weigh more heavily in favor of either Plaintiffs or Defendants. As the court observed, most of the private factors involve only economic concerns. Defendants and Plaintiffs alike can reduce their costs of trial preparation by hiring foreign counsel to depose foreign witnesses, of course. Since Plaintiffs offered to advance the costs of Defendants' travel abroad, however, the Defendants cannot reasonably object to the burden of gathering evidence outside the United States. In sum, the court does not perceive how requiring United States maritime enterprises to defend an admiralty claim in a United States forum can be either oppressive or vexatious.

Were the Plaintiffs citizens of the United States, the reasoning of the Defendants logically would entail the same result they argue for here. Their argument would be equally persuasive in favor of a *forum non conveniens* dismissal. Yet the court perceives no basis in the Gilbert or Reyno decisions to grant the United States enterprises effective immunity from suit by Americans in a United States court for maritime injuries arising overseas. And if dismissal of an American plaintiff's cause of action is suspect, the Treaty requires the same conclusion as to foreign seamen.

The public interests involved are naturally of more concern to the court than to the parties. Understandably, the court is tempted, in light of its crowded docket, to use every legal expedient in disposing of cases. But the court will not yield to the temptation offered by the Defendants if the court must thereby discriminate against foreign wards of the admiralty by denying them "equality of treatment" under law.

For the above reasons and those explained in the previous Memorandum Order, the court properly denied the Defendants' Motions to Dismiss.